**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| William Joseph Moise, | ) | Case No.: 11-03770-ABB-7 |
| | ) | |
| Debtor. | ) | |
| | | |
| Paul A. Sorse, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | A. P. No.: 11-00102-BGC |
| | ) | |
| William Joseph Moise, Jr., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

The matter before the Court is the <u>Complaint Objecting to Discharge</u> filed on June 7, 2011, by the Plaintiff Paul Sorse against the Defendant/Debtor William Moise, Jr. requesting the Debtor's discharge be denied pursuant to 11 U.S.C. Section 727(a). Docket No. 1.  The final evidentiary hearing was held on October 12, 2012, at which the parties and their counsel appeared.  The parties filed post-hearing briefs pursuant to the Court's directive. Docket Nos. 38 and 39.

### I.  Applicable Law

### A.  Section 727

Section 727 of the Bankruptcy Code requires a court to grant a debtor a discharge unless certain facts exists. If they exist, the court may deny the discharge. In this proceeding, the Plaintiff contends that Mr. Moise's discharge should be denied pursuant to subsections 727(a)(3), 727(a)(4)(A), and 727(a)(5). Those subsections read:

The court shall grant the debtor a discharge, unless –

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or

>business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
>
>(4) the debtor knowingly and fraudulently, in or in connection with the case--
>
>>(A) made a false oath or account; and
>
>(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

11 U.S.C. § 727(a)(3)-(5).[1]

## B. Burden of Proof

The per curiam opinion of the Court of Appeals for the Eleventh Circuit in In re Protos, Case No. 08-16950, 2009 WL 977314 (11th Cir. Apr 13, 2009) (unpublished opinion) explains the burdens of proof where a debtor's discharge is challenged.[2] It reads in pertinent part:

>The Appellant argues that the district court erred in affirming the bankruptcy court's ruling that denied him a discharge pursuant to sections 727(a)(2), (a)(3), (a)(4), and (a)(5). "A party who objects to a discharge has the burden to prove the objection by a preponderance of the evidence." In re Jennings, 533 F.3d 1333, 1339 (11th Cir.2008) (per curiam) (citing Grogan v. Garner, 498 U.S. 279, 289-91, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)); In re Chalik, 748 F.2d 616, 619 (11th Cir.1984) ("At trial, the party objecting to a discharge has the burden of proving the objection.") (per curiam); Rice v. Matthews, 342 F.2d 301, 303 (5th Cir.1965). "Once the creditor has met this burden, the debtor must bring forward enough credible evidence to dissuade the court from exercising its jurisdiction to deny the debtor discharge based on the evidence presented by the objecting party." Jennings, 533 F.3d at 1339 (quotation marks, alteration, and citation omitted); Chalik, 748 F.2d at 619 (addressing specifically section 727(a)(4)).

Id. at *1.

---

[1] Count I of the Plaintiff's complaint, which was based on subsection 727(a)(2), was voluntarily dismissed by Plaintiff after the evidentiary hearing. Docket No. 38.

[2] This opinion was not published in West's Federal Reporter. See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. It is cited in conformity with Eleventh Circuit Rules 36-2, 36-3.

## C. Exceptions to Discharge

The per curiam opinion in In re Matos (The Cadle Company v. Parks–Matos), Case No. 07-12628, 2008 WL 596744 (11th Cir. March 6, 2008)(unpublished opinion), explains:

> An individual debtor's pre-bankruptcy debts are generally dischargeable in a Chapter 7 bankruptcy case. 11 U.S.C. § 727(a), (b). "Moreover, courts generally construe the statutory exceptions to discharge in bankruptcy 'liberally in favor of the debtor,' and recognize that '[t]he reasons for denying a discharge ... must be real and substantial, not merely technical and conjectural.' " In re Miller, 39 F.3d 301, 304 (11th Cir.1994) (quoting In re Tully, 818 F.2d 106, 110 (1st Cir.1987)). This is so because revocation of a discharge in bankruptcy is an extraordinary remedy. See In re Bowman, 173 B.R. 922, 924 (9th Cir. BAP 1994).

Id. at *1.[3]

## II. Findings of Fact and Conclusions of Law

### A. The Debtor's Real Property

The Debtor lived in Rhode Island and was a City of Providence, Rhode Island firefighter for twenty years. He owned and lived in a house at 38 Roanoke St., Providence, Rhode Island ("the Rhode Island property").

In 2005, the Debtor purchased a second house, this one in Lady Lake, Florida ("the Lady Lake property"). The Lady Lake house was located down the street from one occupied by his mother and the Plaintiff, who was the Debtor's stepfather.

The Debtor's mother had legal authority to rent and manage the Lady Lake property for the Debtor, but, for all practical purposes, the Plaintiff was the property manager from the date of purchase until 2008. The Plaintiff executed the closing documents, managed renovations of the house, furnished the house, found renters, collected rents, arranged for repairs, and paid expenses for the Lady Lake property.

The Lady Lake property was rented January through March of each year. the Plaintiff deposited rents from the property into and paid expenses for that property from a bank account in Debtor's name.

---

[3] This opinion also was not published in West's Federal Reporter. See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. It too was cited in conformity with Eleventh Circuit Rules 36-2, 36-3.

In 2008, Lucy Poggi, the Debtor's then-girlfriend, informed the Plaintiff she would manage the rental of the Lady Lake property. Later that year, the Debtor made the Lady Lake house his primary residence. He worked in Rhode Island the first half of that year but visited Lady Lake each month.

The Debtor does not recall whether the Lady Lake property was rented at all in 2008, but after he retired in June 2008, he moved into the Lady Lake property permanently. He brought his personal property to Lady Lake and gave the Plaintiff some of the furniture that had been in the Lady Lake property when it was a rental property. The Debtor's brother moved into the Lady Lake property with him.

The Debtor continued to own his Rhode Island property, which the Debtor's father lived in after the Debtor filed the pending case. The Debtor's father furnished the Rhode Island property with his own personal property. He did not pay rent to the Debtor. The Debtor's brother or friend also stored personal property in the Rhode Island property beyond the petition date.

During 2004 through 2007, the Debtor borrowed money from the Plaintiff to pay expenses related to the Debtor's real properties. The Debtor listed those debts to the Plaintiff's on his bankruptcy petition for $57,000.00.[4]

The Debtor testified that the money the Plaintiff loaned him was in the form of payments toward the Debtor's credit card bills. The Plaintiff testified he paid off Debtor's credit cards so that the Debtor would be able to refinance the Rhode Island property. The parties' agreements, intentions, and transactions were not documented. No promissory notes or other writings were executed. All communications were verbal.

The Debtor stopped making payments on the Rhode Island property mortgage loan in 2010. Consequently, he defaulted on that loan. The lender sought to foreclose.

### B. The Debtor's Chapter 7 Bankruptcy

Debtor filed the pending Chapter 7 bankruptcy in Florida on March 18, 2011, days before the scheduled foreclosure sale of the Rhode Island property. As previously stated, he listed a $57,000.00 debt to the Plaintiff on Schedule F. He also scheduled a $53,000.00 debt to his former girlfriend Lucy Poggi.[5] Though he acknowledged in testimony that he owes money to his mother and Nadya Pinchuk, a current girlfriend in Russia, he did not list those debts in his schedules. He testified the debts to his mother

---

[4] The Debtor did not mark the debt as disputed; but, at the hearing, he testified he disputes whether he owes the debt and its amount. He claimed the furniture he gave to the Plaintiff was not credited against the loan balance, as it should have been.

[5] Ms. Poggi did not file a claim.

and Ms. Pinchuk are moral obligations, not contractual ones; and he testified he would not have scheduled the debt to Plaintiff if Plaintiff had been his blood relative.

On his Statement of Financial Affairs ("SOFA"), the Debtor: (1) denied making transfers of any property in the two years before the petition (Question No.10); (2) stated he held no property for another person (in response to Question No. 14); and, (3) claimed he had not occupied any premises he vacated within three years prior to the commencement of the bankruptcy case (Question No. 15). The Debtor amended his SOFA two days before the hearing. He revised his answer to Question No.10 by listing several stock sales that occurred at the beginning of the two-year look back period as well as the sale of a yard shed to his brother. He did not change his answers to Questions Nos. 14 and 15.

### C. The Plaintiff's Adversary Proceeding

The Plaintiff filed the pending multi-count Complaint objecting to the Debtor's discharge pursuant to 11 U.S.C. Section 727.[6] Each remaining count is discussed below.

### 1. Count II – Subsection727(a)(3)

Count II is based on subsection 727(a)(3). As quoted above, that subsection provides that a court should not grant a debtor a discharge if:

> the debtor has concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case. . . .

11 U.S.C. §727(a)(3).

The purpose of Section 727(a)(3) is to make certain that the creditors and the Trustee are given sufficient information to understand the debtor's financial condition. In re Juzwiak, 89 F.3d 424, 427 (7th Cir. 1996). No fraudulent intent need be proven for a discharge to be withheld pursuant to this Section. If the debtor does not produce sufficient records from which his financial condition can be ascertained, the debtor must

---

[6] As stated above, the party objecting to discharge carries the burden of proof and the standard of proof is preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991). Objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986). "[T]he reasons for denying a discharge must be real and substantial, not merely technical and conjectural." Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 304 (11th Cir. 1994).

justify a lack of adequate record keeping. 11 U.S.C. § 727(a)(3); Meridian Bank v. Alten, 958 F.2d 1226, 1234 (3d Cir. 1992). Each case must be determined on its own facts and the level of a debtor's business acumen and sophistication are relevant. In re Milam, 172 B.R. 371, 375 (Bankr. M.D. Fla. 1994); Meridian Bank, 958 F.2d at 1231.

      The Debtor's trial testimony was credible. He admitted he could not produce all documents requested by the Plaintiff, and he plausibly claimed to have produced all documents he had in his possession. The Defendant credibly testified he could produce no financial documents from before his move to Florida in 2008 because those records were lost or destroyed. And, while his financial record-keeping remained less than stellar after the move, this seems to be a result of his lack of financial sophistication. The Plaintiff presented evidence that the Debtor did not attempt to obtain copies of documents from his credit card companies, a bank where he had a joint account with his ex-wife, or his CPA. The Debtor testified he did not request copies of these documents because obtaining them would have cost money he did not have. He also testified credibly that he did not use an account on which his name remained with his ex-wife. That account is used by only his ex-wife.

      The testimony established that the Debtor did not have any significant business experience. His role in the rental of the Lady Lake property shows this lack of financial acumen. He delegated the management of that property entirely, first to his stepfather and then to his girlfriend. His dealings with regard to the Lady Lake property were verbal, with no documentation of agreements, understandings, and financial transactions. His failure to recall whether the property was rented at all in 2008, the year he moved to Florida, is indicative of his situation.

      The Debtor provided federal tax returns for years 2009 and 2010. The Plaintiff requested statements from a Monex account for a four-year period. The Debtor testified he did not have those. The Debtor did provide the title certificates to all his motor vehicles, but in contrast, he did not produce all bank account statements from January 1, 2007 through April 30, 2011, as requested by Plaintiff. He did, however, provide all bank account statements he had in his immediate possession, including checking account records for a Bank of America account for three months before his bankruptcy filing. The Debtor also provided credit card statements for thirty to sixty days before filing (rather than the January 1, 2010 to April 30, 2011 period requested by Plaintiff) and a one-page AmeriTrade account statement which stated his cash balance and stock positions as of March 17, 2011, the day before he filed bankruptcy (rather than the January 1, 2007 to April 30, 2011 period requested by Plaintiff).

      Based on the above, the Court finds that the Plaintiff has failed to establish a basis for denial of the Debtor's discharge pursuant to 11 U.S.C. Section 727(a)(3). The Debtor produced sufficient documentation from which creditors could deduce his financial situation as of the petition date. Most helpful were Defendant's 2009 and 2010 tax returns which show his income. Debtor is unsophisticated in business and kept reasonable records given his lack of sophistication.

### 2. Count III – Subsection 727(a)(4)(A)

Count III is based on subsection 727(a)(4)(A). As quoted above, that subsection provides that a court should not grant a debtor a discharge if the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account. 11 U.S.C. §727(a)(4)(A).

The Plaintiff alleged the Debtor made such a false oath or account by omitting material information regarding investment accounts and income on the SOFA (Questions Nos. 10, 11, and 12) and by failing to include investment income on Schedule I. The Plaintiff also alleged the Debtor failed to disclose all household goods, televisions, and computers on his Schedule B; failed to include a golf cart and two automobiles on Schedule B; and undervalued automobiles listed on Schedule B.

At trial, the Plaintiff attempted to satisfy his burden on this Count by demonstrating that the Debtor's answers to Question Nos. 14 and 15 on the SOFA were inaccurate.

A discharge shall be denied pursuant to Section 727(a)(4)(A) where "the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account." 11 U.S.C. § 727(a)(4)(A). A disclosure omission may constitute a false oath or account pursuant to Section 727(a)(4)(A). A discharge should be denied where the omission is both fraudulent and material. Swicegood v. Ginn, 924 F.2d 230, 232 (11th Cir. 1991). "Discharge may not be denied where the untruth was the result of mistake or inadvertence." Keefe v. Rudolph (In re Rudolph), 233 Fed. App'x 885, 889 (11th Cir. 2007) (citation omitted).

The Plaintiff did demonstrate that the Debtor's answers on the SOFA were inaccurate in several instances. The Debtor should have responded that he was holding property for another, as his father and friend had personal property in the Rhode Island property. The Debtor should have stated he lived in Rhode Island within three years of filing his petition as he resided there for a few months into the three-year look back period. And, the Debtor should have listed stock trades within the early part of the two years prior to filing and the sale of a shed to his brother on the SOFA.

Notably, the Plaintiff did not demonstrate that the Debtor had misstated his income. The Plaintiff's theory that the Debtor's stock trades produced significant income was not supported by the evidence. The tax returns demonstrate the Debtor traded frequently but did not gain significant income from the trades. The Plaintiff also did not demonstrate that the automobiles and golf cart were more valuable than the Debtor claimed, or that the Debtor owns personal property in excess of that disclosed.[7]

---

[7] The Chapter 7 Trustee investigated the vehicle values and did not object to the values claimed. At trial, the Debtor offered to sell the Plaintiff's counsel any of the vehicles for the values listed on the petition.

The Plaintiff also did not demonstrate the Debtor's misstatements and omissions were material. The stock trades and shed sale were de minimus transactions, and the stock sales appear on the Debtor's tax returns. The statements about the move date and holding property for others were of no real consequence. Therefore, the evidence does not support a finding that the Debtor was attempting to hide property from creditors.

Most importantly, the Plaintiff did not demonstrate the errors and omissions were made with fraudulent intent to deceive creditors. The Debtor explained he misunderstood the question about holding the property of another because those people were able to come get their property whenever they wished. And, he admitted his errors in calculating the date of his move and failing to list the stock transfers and shed sale. He amended his filing before the trial to list the stock and shed transfers. The Debtor plausibly testified he attempted to complete the petition truthfully.

Based on the above, the Court finds that the Plaintiff has failed to establish a basis for denial of the Debtor's discharge pursuant to 11 U.S.C. Section 727(a)(4)(A). The Debtor's errors were a result of his lack of sophistication and his rush to file for bankruptcy on the eve of foreclosure. They were not made knowingly and fraudulently through a false oath or account.

### 3. Count IV – Subsection 727(a)(5)

Count IV is based on subsection 727(a)(5). As quoted above, that subsection provides that a court should not grant a debtor a discharge if, "the debtor has failed to explain satisfactorily, before determination of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5).

The Plaintiff makes the general allegation in Count IV that the Debtor, "failed to explain satisfactorily the loss of assets or deficiencies of assets to meet the Debtor's liabilities." Id.

A plaintiff has the initial burden of establishing a Section 727(a)(5) objection to discharge. Hawley v. Cement Indus., Inc. (In re Hawley), 51 F.3d 246, 249 (11th Cir. 1995). To do so, he "must establish 'the debtor formerly owned substantial, identifiable assets that are now unavailable to distribute to creditors.'" Walton v. Wheaton (In re Wheaton), 474 B.R. 287, 292 (Bankr. M.D. Fla. 2012) (quoting Murphy v. Rivertree Landing, LLC (In re Murphy), 2008 WL 2224835 *5 (M.D. Fla. May 27, 2008)). The burden then shifts to the debtor to satisfactorily explain the loss. In re Hawley, 51 F.3d at 249. Whether a debtor has satisfactorily explained a loss of assets is a finding of fact. Id. at 248. "To be satisfactory, an explanation must convince the judge." Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 619 (11th Cir. 1984).

The Plaintiff argued that the Debtor received significantly more income than shown on his petition, and the Debtor could not explain where that money went. The Court cannot find that the evidence supports these conclusions.

The Debtor's tax returns do not demonstrate he had significant investment income. They do they establish the Debtor had pension income and made a very modest sum trading securities.  The tax returns also reflect substantial losses on Debtor's rental properties in 2009 and 2010.

The Debtor's testimony and bank documents support a finding that he spent the money he received from his pension (monthly distributions and the lump-sum payment he took in 2009) and his modest investment gain on his living expenses, the Rhode Island property, and his girlfriends. There is evidence that the Debtor was not a good money manager, but there is no evidence to support a finding he ever had (much less lost) significant assets.

Based on the above, the Court finds that the Plaintiff has failed to establish a basis for denial of the Debtor's discharge pursuant to 11 U.S.C. Section 727(a)(5).  The Debtor did not fail to satisfactorily explain any loss of assets or deficiency of assets to meet his debts.

### III. Conclusion

Based on the above, the Court concludes that the Plaintiff did not establish a basis for denial of the Debtor's discharge pursuant to any provision of 11 U.S.C. Section 727(a).

A separate order will be entered in conformity with this memorandum opinion.

Dated: March 13, 2013                    /s/Benjamin Cohen
                                         BENJAMIN COHEN
                                         United States Bankruptcy Judge

BC:pb